[No. 2962-0-III. Division Three. December 16, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. KATHY
LOUISE ROTUNNO, *Appellant.*

*Byron G. Powell* and *Wallace, Powell & Anderson,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Clark Colwell, Deputy,* for respondent.

MUNSON, J.—Kathy Rotunno and Diane Goettel were charged with first degree theft (RCW 9A.56.030). The trials were severed and Ms. Goettel was acquitted. Ms. Rotunno appeals her conviction.

Annie Logsdon, a retired schoolteacher, owned a home in Spokane, Washington, and lived there with two other retirees, her brother, Patrick Queen, and Harold Behrens. On October 15, 1977, Mrs. Logsdon left Spokane to visit relatives out of state. Mr. Behrens went to a restaurant/lounge in Spokane on November 16 where he met Diane Goettel. The two subsequently left the lounge and drove in Ms. Goettel's car to the home of Kathy Rotunno.[1] The threesome then drove to Mr. Behrens' residence, stopping along the way for liquor and some food. Mr. Behrens continued to consume a substantial amount of alcohol and after a period of time at his home, the two women stated they would leave unless he showed them a "good time" downtown.[2]

Although he has little recollection of subsequent events, Mr. Behrens, in a state of inebriation, was driven downtown where he purchased several hundred dollars' worth of clothing for the women on a charge account at a local department store. The threesome then returned to Mr.

---

[1] Both Ms. Goettel and Ms. Rotunno admit they are prostitutes who frequent the restaurant/lounge in question.

[2] Mr. Queen testified Ms. Rotunno asked him to join them in a drink, but before he decided to accept he saw the two women help Mr. Behrens into their car and drive off. Mr. Queen then left the home, to return later in the evening.

Behrens' residence, where he continued to drink. When the alcohol was exhausted, Mr. Behrens went upstairs to Mr. Queen's living area to retrieve some liquor known to be in a cupboard. During this time, Mr. Behrens stated Ms. Goettel and Ms. Rotunno went through the rooms upstairs apparently searching for alcohol.

When Mr. Queen returned home later that evening, he discovered someone had gone through his rooms and found Mr. Behrens passed out on the davenport. The following morning Mr. Behrens found several items belonging to him had been stolen and Mrs. Logsdon's bedroom had been rifled. Upon her return, Mrs. Logsdon verified that jewelry valued in excess of $3,000 had been taken.

First, Ms. Rotunno contends the trial court erred in refusing to grant a motion to dismiss at the close of the prosecution's case, but she elected to proceed and present evidence in her defense. By proceeding, she waived this assignment of error. *State v. Pennewell,* 23 Wn. App. 777, 778, 598 P.2d 748 (1979); *State v. Knott,* 6 Wn. App. 436, 441, 493 P.2d 1027 (1972); *State v. Beck,* 4 Wn. App. 306, 307, 480 P.2d 803 (1971).

Next, Ms. Rotunno contends the trial court committed prejudicial error by permitting an instruction on the law of accomplice when there existed no evidence that she was an aider and abettor as opposed to being a principal.

The accused may be convicted on evidence and instructions which indicate her participation in the crime as either a principal or as an aider and abettor even though she is the only person charged. *State v. Carothers,* 84 Wn.2d 256, 260, 525 P.2d 731 (1974); *State v. Sutherland,* 24 Wn. App. 719, 730, 604 P.2d 957 (1979); *State v. Taplin,* 9 Wn. App. 545, 547, 513 P.2d 549 (1973). The jury could not know absolutely whether the theft was perpetrated by Ms. Rotunno, Ms. Goettel, or both, or someone else. It is enough under RCW 9A.08.020[3] that there be substantial evidence, albeit circumstantial evidence, that Ms. Rotunno

---

[3]RCW 9A.08.020 reads in part:

participated either as principal or accessory. *State v. Baylor,* 17 Wn. App. 616, 618, 565 P.2d 99 (1977).

The next alleged error concerns instruction No. 6, which reads:

> A person who is an accomplice in the commission of a crime is guilty of that crime.
>
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she aids another person in planning or committing the crime. The word "aid" means all assistance whether given by words, acts, encouragement, support or presence.

Ms. Rotunno contends the instruction was erroneous, misleading, and incomplete by failing to instruct that in order for a person to be an accomplice by presence, she must also be "ready to assist" the perpetrator.[4] Otherwise, it is argued, a person could be convicted under the accomplice statute, RCW 9A.08.020, by presence alone.

■ The last sentence of the instruction states, "[t]he word 'aid' means all assistance whether given by . . . or presence." Can this be reasonably construed as saying, presence alone (along with knowledge) is enough to satisfy the definition of the term "aid" in the statute? To the above instruction, WPIC 10.51, 11 Wash. Prac. 97, added the sentence, "A person who is present at the scene and is ready to assist by his or her presence is aiding in the com-

---

"(3) A person is an accomplice of another person in the commission of a crime if:

"(a) With knowledge that it will promote or facilitate the commission of the crime, he

"(i) solicits, commands, encourages, or requests such other person to commit it; or

"(ii) aids or agrees to aid such other person in planning or committing it; or

"(b) His conduct is expressly declared by law to establish his complicity."

[4]WPIC 10.51 states in part:

"The word 'aid' means all assistance whether given by words, acts, encouragement, support or presence. A person who is present at the scene and is ready to assist by his or her presence is aiding in the commission of the crime."

mission of the crime." This inclusion clarifies the proposition that presence alone is not sufficient. *State v. Aiken,* 72 Wn.2d 306, 349, 434 P.2d 10 (1967), *rev'd on other grounds,* 403 U.S. 946, 29 L. Ed. 2d 856, 91 S. Ct. 2283 (1971), states:

> [I]n order for a person to be an aider or abettor by his presence, he must be ready to assist or must assist the perpetrator of the crime by his presence.

In the most recent interpretation of this issue, the court in *In re Wilson,* 91 Wn.2d 487, 588 P.2d 1161 (1979), said at page 492:

> Even though a bystander's presence alone may, in fact, encourage the principal actor in his criminal or delinquent conduct, that does not in itself make the bystander a participant in the guilt. It is not the circumstance of "encouragement" in itself that is determinative, rather it is encouragement plus the intent of the bystander to encourage that constitutes abetting. *We hold that something more than presence alone plus knowledge of ongoing activity must be shown to establish the intent requisite to finding Wilson to be an accomplice in this instance.*

(Italics ours.) *See also State v. McKeown,* 23 Wn. App. 582, 588, 596 P.2d 1100 (1979).

■ The instruction presented was inartfully drawn, but conveyed the law. If rearranged slightly to read:

> A person is an accomplice in the commission of a crime if he or she aids another person in planning or committing the crime, with knowledge that it will promote or facilitate the commission of a crime. The word "aid" means all assistance, whether given by words, acts, encouragement, support or presence.

the instruction would have more clearly advised the jury of the definition of an accomplice. But even in its present form, the instruction correctly stated the law, was not misleading and provided Ms. Rotunno ample opportunity to argue her theory of the case. *State v. Mark,* 94 Wn.2d 520, 618 P.2d 73 (1980). The State still had the burden of proving Ms. Rotunno did more than merely be present.

We have considered the remaining assignments of error and find them without merit.

The judgment of the Superior Court is affirmed.

ROE, J., concurs.

McINTURFF, J. (dissenting)—I respectfully dissent from my colleagues. The last sentence of the accomplice instruction reads: "The word 'aid' means all assistance whether given by words, acts, encouragement, support or presence." My concern is whether the jury understood that Ms. Rotunno, to be an accomplice by presence, must also be "ready to assist" the perpetrator. It could have convicted Ms. Rotunno by presence alone under the given accomplice instruction. This is particularly important where no one saw the commission of the crime. How the crime was committed, or who participated in it is completely circumstantial.

In *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977), the court set forth the standard for reviewing instructions which are an incomplete statement of the law:

> When the record discloses *an error in an instruction* given on behalf of the party in whose favor the verdict was returned, the error is *presumed to have been prejudicial,* and to furnish ground for reversal, unless it affirmatively appears that it was harmless. . . .
>
> A harmless error is an error which is *trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*

The State argues the instruction was sufficient for Ms. Rotunno to argue her theory of the case. However, under RCW 9A.08.020, a person is an accomplice when he knowingly "solicits, commands, encourages, or requests" the commission of a crime, or aids in its planning or commission. Mere presence at the scene of the crime is not enough to establish liability as an accomplice. *In re Wilson,* 91 Wn.2d 487, 491, 588 P.2d 1161 (1979); *State v. McKeown,* 23 Wn. App. 582, 588, 596 P.2d 1100 (1979). Although the

trial court has wide discretion to determine the wording of instructions, the last sentence of the challenged instruction could reasonably be construed to allow the jury to find the defendant guilty as an accomplice merely on the basis of her knowing presence at the scene of the crime.[5]

An instruction must be framed to preclude a jury from drawing the wrong conclusion; it is not sufficient if it is drawn in such a way that a jury *may* reach the right conclusion. The instruction should be clear, explicit, and free from ambiguity, otherwise it may confuse and mislead the jury. The majority agrees the instruction was inartfully drawn and rearranged the instruction to indicate how it could have more clearly advised the jury. But, the jury should neither be required to perform mental gymnastics nor be well versed in the intricacies of the English language to clearly understand the instruction.

The trial court had before it the total WPIC 10.51, 11 Wash. Prac. 97, accomplice instruction but deleted the last sentence, which states: "A person who is present at the scene and is ready to assist by his or her presence is aiding in the commission of the crime." That clarifies to the lay juror that presence alone is not sufficient. *State v. Aiken,* 72 Wn.2d 306, 349, 434 P.2d 10 (1967), *rev'd on other grounds,* 403 U.S. 946, 29 L. Ed. 2d 856, 91 S. Ct. 2283 (1971). In the foreword to the Washington Pattern Jury Instructions (11 Wash. Prac.), on page v, our Supreme Court recommended the use of these pattern jury instructions for "simple, brief, unbiased statements of the law." By utilizing the last sentence included in WPIC 10.51, the lay juror would have been adequately apprised of the law and the possibility of confusion negated.

Since I am unable to say the misleading instruction "in no way affected the final outcome of the case," I would

---

[5]Ms. Rotunno's brief notes an accomplice instruction was not given in the companion case of *State v. Goettel,* where the codefendant, Ms. Goettel, was acquitted.

reverse the judgment of the Superior Court and remand the case for a new trial.

Reconsideration denied January 16, 1981.

Review granted by Supreme Court March 27, 1981.