[No. 47569-5. En Banc. July 30, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. KATHY
LOUISE ROTUNNO, *Petitioner.*

*Wallace, Powell & Giboney,* by *Byron G. Powell,* for
petitioner (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Clark D.
Colwell, Deputy,* for respondent.

DORE, J.—Annie Logsdon, a retired schoolteacher, shared

her home in Spokane with Patrick Queen and Harold Behrens, also retirees. Logsdon left Spokane on October 15, 1977, for an extended visit with relatives. On November 16, Behrens went to a local bar where he met a woman, Diana Goettel. Together they went to the home of petitioner, Kathy Rotunno. The three spent the remainder of the afternoon and part of that evening together, drinking intoxicating beverages and spending Behrens' money.[1] Subsequently, the trio went to Behrens' residence for further drinking. When Behrens' liquor supply was exhausted, he went upstairs to Queen's quarters in search of additional liquor. Behrens testified that Goettel and petitioner went through the upstairs rooms in search of alcohol. Behrens subsequently passed out or fell asleep.[2]

Queen returned home and found his room in disarray. Behrens awoke the next morning and found a number of his valued possessions missing. The two men also discovered that Logsdon's room had been disturbed. When Logsdon telephoned home on November 19 and was told of the incident, she asked Queen to lock the door to her bedroom, which he did at that time. Logsdon returned home on December 13, unlocked the door to her room and discovered that her jewelry was missing.

Although other women were in Logsdon's home during her absence, the State charged Goettel and petitioner[3] with first degree theft. On the State's motion, the defendants were tried separately. Goettel was acquitted and petitioner convicted as an accessory to first degree theft. Petitioner's conviction was affirmed by a divided Court of Appeals. *State v. Rotunno*, 27 Wn. App. 901, 621 P.2d 191 (1980).

---

[1] The record shows that, among other things, Behrens purchased about $300 worth of clothes for the two women at the Bon Marche.

[2] Behrens admitted at trial that he had a severe drinking problem, had been treated for alcoholism in the past, and had been drinking quite heavily for some time before November 16, the date when he met the two women.

[3] Both women admit to being prostitutes.

Discretionary review was granted by this court on March 27, 1981. We reverse and remand.

The jury was given instruction No. 6, which reads as follows:

A person who is an accomplice in the commission of a crime is guilty of that crime.

A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she aids another person in planning or committing the crime. The word "aid" means all assistance whether given by words, acts, encouragement, support or presence.

Petitioner argues that this instruction misstates the law on accomplice liability because it would have allowed a jury to find such liability if the jury believed that petitioner was present at the scene of the crime with knowledge that her presence would promote or facilitate the commission of the crime.

■ This court has repeatedly stated that one's presence at the commission of a crime, even coupled with a knowledge that one's presence would aid in the commission of the crime, will not subject an accused to accomplice liability. To prove that one present is an aider, it must be established that one is "'ready to assist'" in the commission of the crime. *In re Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979). This interpretation of the law has been embodied in the Washington pattern instructions, WPIC 10.51, from which instruction No. 6 was taken. However, the instruction given at petitioner's trial omitted the last sentence of that pattern instruction which reads as follows:

A person who is present at the scene and is ready to assist by his or her presence is aiding in the commission of the crime.

The majority of the Court of Appeals admitted that the instruction, as given, was "inartfully drawn, but conveyed the law". *State v. Rotunno, supra* at 905. That court, while agreeing with petitioner that knowing presence was, by itself, insufficient for a finding that an accused was an

aider, also agreed with the State that the instruction allowed petitioner to argue her theory of the case to the jury. We agree with the dissenting opinion that the instruction as given did not sufficiently inform the jury that to convict petitioner, it must find that she was "ready to assist" in the perpetration of the crime. *State v. Rotunno, supra* at 906 (McInturff, J., dissenting).

> Even though a bystander's presence alone may, in fact, encourage the principal actor in his criminal . . . conduct, that does not in itself make the bystander a participant in the guilt. It is not the circumstance of "encouragement" in itself that is determinative, rather it is encouragement plus the intent of the bystander to encourage that constitutes abetting. We hold that something more than presence alone plus knowledge of ongoing activity must be shown to establish the intent requisite to finding Wilson to be an accomplice in this instance.

*In re Wilson, supra* at 492. In that case, a juvenile seemed to be part of a group which had stolen weatherstripping, tied it into a rope, and had strung the rope across a road. Sometimes the rope was held taut. Wilson was never actually seen holding the rope nor participating in the theft. He was merely seen with the group, all of whom were charged with reckless endangerment. Wilson's accomplice conviction was reversed by this court because of the absence of testimony that Wilson was seen holding the rope.

We find in the subject case an even more compelling basis for reversal than we had before us in *In re Wilson, supra*. The proof at petitioner's trial was totally circumstantial; no one witnessed the crime, it was not established exactly when the crime was committed, the stolen property was never recovered or traced to petitioner, some evidence even tended to show that others, besides petitioner and her codefendant, had access to Logsdon's room before Queen locked the door. We acknowledge that circumstantial evidence is competent evidence. *State v. Young,* 87 Wn.2d 129, 550 P.2d 1 (1976). In light of our repeated insistence on the necessity of the "readiness to assist" element to

establish accomplice liability, however, the instruction was improper as given because it may have misled the jury.

The giving of instruction No. 6 constitutes reversible error. It cannot be said, as a certainty, that the instruction "in no way affected the final outcome of the case". *State v. Savage,* 94 Wn.2d 569, 578, 618 P.2d 82 (1980), quoting from *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977). Of special note is the fact that Goettel, the codefendant of petitioner who was tried separately, was acquitted. No aiding and abetting instruction was given in Goettel's case. Even the Court of Appeals admitted that the sentence omitted from the pattern instruction "clarifies the proposition that presence alone is not sufficient". *State v. Rotunno, supra* at 905. And the court suggested a rearrangement of the wording of the instruction which "would have more clearly advised the jury of the definition of an accomplice". *State v. Rotunno, supra* at 905. The suggested syntactical change does not advise the jury that the accused must be ready to assist, which is the critical omission in the instruction as given. The petitioner was prejudiced by such omission.

We reverse and remand for a new trial in accordance with the provisions of this opinion.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, and DIMMICK, JJ., concur.