972 P.2d 573 (1999)
STATE of Washington, Respondent,
v.
Hung Van NGUYEN; Senh Venh Tang; Lam Hong Giang; Defendants,
and Linh Ngoc Bui, and each of them, Appellant.
No. 40694-9-I.
Court of Appeals of Washington, Division 1.
March 8, 1999.
*574 David B. Koch, Nielsen, Broman & Associates, Seattle, for Appellant.
Charles W. Lind, King County Deputy Prosecuting Attorney, Seattle, for Respondent.
GROSSE, J.
Linh Ngoc Bui was convicted of assault in the first degree after the trial court instructed the jury that a person is an accomplice in a crime if he acts with knowledge that his action will promote a crime and not the crime as the statute requires. This allowed the State to argue to the jury that it could find Bui was an accomplice to first degree assault so long as he acted with knowledge that his actions would promote or facilitate the commission of any crime against a person. This is not the law of accomplice liability. Because we cannot say that the State's improper argument was harmless in light of the particular facts of this case, we reverse.

FACTS
Early on the evening of April 6, 1996, Bui and his girl friend "June" had dinner at a house on South Jackson Street which police identified as the "crash pad" of a gang called the Viet Boys. June testified that about 30 minutes after they arrived she heard an unidentified man speaking angrily in another room. She then heard what she thought was a gunshot. June said she did not see who fired the gun but guessed it was the person who was angry. She testified that Bui looked scared when he heard the sound and said he would take her home. He did so and then returned to the Jackson Street house.
Later that evening, someone suggested that they drive around the International District. Four or five people, including an individual named Hung Van Nguyen, got into Bui's Honda. Three others got into a white Blazer that belonged to Senh Tang. Shortly after midnight, they encountered two other cars in the International District occupied by members of a gang called the Young Oriental Troop. Bui later told police that he saw them make hand signals at the people in his car. He then heard someone in the car say "follow them" and "stop them." With the Blazer following him, Bui made a U-turn and followed the other cars to an intersection where he pulled in front of one of the cars and blocked it. He stayed in the car while his passengers got out. Shortly thereafter he heard gunfire but did not see who was shooting. Two of the occupants of the car he had followed sustained bullet wounds. Their car was also hit by two bullets as the driver pulled around Bui's car to get away. Tang, the driver of the Blazer, testified that he saw Lam Giang, one of his passengers, trying to put a gun away as he got back into the Blazer. Both Tang and Bui then drove their passengers back to the Jackson Street house and dropped them off.
Bui, Nguyen, and Tang were each charged with one count of assault in the first degree with a firearm enhancement. Bui and Tang, the two vehicle drivers, were each offered a reduced sentence in exchange for their testimony at trial. Bui rejected the offer and proceeded to trial with Nguyen. At trial, the *575 State amended each information to add two more counts of first degree assault, each with a firearm enhancement.
When both sides had rested, the trial court instructed the jury that "[a] person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either ... aids or agrees to aid another person in planning or committing a crime." Bui objected to the instruction arguing that for accomplice liability to attach, it must be shown that the defendant had general knowledge of the crime his action promoted or facilitated. The trial court declined to modify the instruction. This allowed the State to argue in closing:
Did Linh Bui know by his actions when he chased after another car, when he pulled across in front of them and blocked them off in an intersection, allowed his passengers to get out, does common sense show us that he knew he was facilitating the commission of a crime? Harassment? Physical assault? Any crime.
. . . .
[I]t's clear [from June's statement] that Linh Bui knows that these people have guns in the house. And it's clear the other people have guns, know there are guns in the house. This isn't a big surprise that people suddenly jump out of these cars and started shooting.
. . . .
It's completely ridiculous to think that Linh Bui did not know he was bringing about a crime, whether it be assaultive, confrontation or whether it be harassment, whether they were going to get out and threaten
[Defense counsel]: Move to strike. Incorrect statement of the law.
The Court: They will receive the law, counsel. Overruled.
At the conclusion of the State's argument, defense counsel asked the court to instruct the jury that the intent to harass could not satisfy the knowledge requirement for accomplice liability to first degree assault. The prosecutor countered that the statute requires nothing more than knowledge of the "general nature of the crime" which, he argued, refers only to whether a crime is a crime against property or a crime against a person. Because harassment and first degree assault are both crimes against a person, the prosecutor argued that intent to harass satisfied the knowledge requirement for accomplice liability to the crime of first degree assault. The trial court agreed with Bui that there was some point at which accomplice liability would not attach, but declined to give the jury any further instruction.
During deliberations the jury sent out an inquiry about the accomplice liability instruction:
Accomplice liability
# 10 states "in the commission of a crime["]
To be an accomplice to first degree assault does he need to have knowledge that he is assisting in a first degree assault or that he is promoting a crime of any kind.[[1]]
The trial court responded, "The defendant does not need to know the specific crime (1st degree assault) that will occur but must know the general nature of the crime that will occur." The jury found both Nguyen and Bui guilty on all three counts and found that a firearm was used in each count.
At the sentencing hearing, defense counsel moved for dismissal on the ground that there was insufficient evidence that Bui knew that any type of assault was going to be committed.[2] The court denied the motion but acknowledged that the record was "essentially silent" on the issue of whether Bui knew there would be a shooting. For that reason, it granted Bui's request for an exceptional sentence downward. It sentenced Bui to 60 months on each of the three enhancements but imposed no underlying sentence. Because it believed that the three mandatory enhancements could not run concurrently, *576 the court ordered that they run consecutively.
Bui appealed. His case was stayed pending the Supreme Court's decision in State v. Lewis, which was consolidated with In re Post Sentencing Review of Charles.[3]

DISCUSSION

Accomplice Liability
Bui first contends that the trial court erred in instructing the jury on accomplice liability. Instruction 10 was based on Washington Pattern Jury InstructionCriminal (WPIC) 10.51 and instructed the jury in pertinent part:
A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:
. . . .
(2) aids or agrees to aid another person in planning or committing a crime.[[4]]
Bui is correct in pointing out that this instruction differs from RCW 9A.08.020(3), the accomplice liability statute, in two small but significant ways:
(3) A person is an accomplice of another person in the commission of a crime if:
(a) With knowledge that it will promote or facilitate the commission of the crime, he
. . . .
(ii) aids or agrees to aid such other person in planning or committing it [.][[5]]
First, while the statute provides that a person is an accomplice in a crime only if he acts with knowledge that it will promote or facilitate the commission of the crime, the instruction states that a person is an accomplice if he acts with knowledge that it will promote or facilitate the commission of a crime. The use of "the" in the statute refers back to the crime charged, i.e., the crime to which a person is an accomplice if he promoted or facilitated it. Thus, the statute indicates that accomplice liability must be read against the crime charged. By using "a" instead of "the," the instruction here, and the WPIC on which it is based, overlooks the required link between the crime the accomplice promoted or facilitated, and the crime to which he is alleged to be an accomplice.
A similar discrepancy exists between the subparagraphs of the statute and the instruction. By using the word "it" to describe the crime in which the defendant has aided the principal, the statute again refers directly back to the crime to which the defendant is an accomplice if he acted to promote or facilitate it. Here, again, the statute requires that the defendant's knowledge relate to the crime charged, i.e., the same crime to which it is claimed he is an accomplice. While the case law explains that the accomplice need not know the degree of the crime committed and need not have the same mental state or specific knowledge of every element of the coparticipant's intended crime, it also makes clear that the accomplice must have "general knowledge of his coparticipant's substantive crime."[6]
In contrast, the departure from the statutory language here allowed the State to argue improperly that so long as Bui knew his actions would promote or facilitate "a crime, whether it be assaultive, confrontation or whether it be harassment [or threats]," that was sufficient to establish accomplice liability for the principal's substantive crime. Indeed, the State's argument went even further than just telling the jury that it could find that Bui was an accomplice to the crime of assault so long as he knew his actions promoted or facilitated "any" crime. The prosecutor effectively told the jury it could find accomplice liability if Bui knew his act could facilitate even a non-criminal confrontation such as an exchange of words. While there are many cases where the discrepancy between the statute and WPIC 10.51 would not result in reversible error, that is not the case *577 here. The language of the instruction was an issue precisely because of the lack of evidence that Bui knew he was promoting or facilitating an assault when he followed the other car.[7]
The jury's confusion about the applicable standard was reflected in its query to the judge which highlighted the "a" that departs from the statutory language in the instruction. By failing to clarify this language in response to the jury's inquiry and instructing it instead that it need only find Bui knew "the general nature of the crime" that was to occur, the trial court compounded its instructional error.[8] While the court's explanation may have sufficed in some cases, it could not suffice here where the State was permitted to argue in closing, over defense objection, that the "general nature" of the crime refers only to whether it is a crime against property or a crime against a person.[9] Because the trial court's failure to clearly instruct the jury regarding the applicable legal test relieved the State of its burden of proving that Bui had "general knowledge of his coparticipant's substantive crime," we cannot say that the error was harmless or that it did not affect the final outcome of the case.[10]
We reverse.
A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.
KENNEDY, A.C.J., and COX, J., concur.
NOTES
[1] (Emphasis in original.)
[2] Bui also pointed to the fact that he was convicted as an accomplice to Lam Giang, who was in the Blazer, despite the fact that the State had presented no evidence that he aided Lam Giang.
[3] In re Post Sentencing Review of Charles, 135 Wash.2d 239, 955 P.2d 798 (1998).
[4] 11 Washington Pattern Jury Instructions: Criminal 10.51, at 157 (2d ed.1994) (emphasis added).
[5] (Emphasis added.)
[6] State v. Rice, 102 Wash.2d 120, 125, 683 P.2d 199 (1984) (citation omitted; emphasis added).
[7] The trial court itself acknowledged that there was "essentially" no evidence that Bui knew there was going to be a shooting.
[8] This phrase, first used by the prosecutor and adopted by the trial court, is apparently a paraphrase of the language in Rice which we have quoted above ("general knowledge of his coparticipant's substantive crime"). Rice, 102 Wash.2d at 125, 683 P.2d 199.
[9] Rice, 102 Wash.2d at 125, 683 P.2d 199.
[10] See State v. Golladay, 78 Wash.2d 121, 139, 470 P.2d 191 (1970) (erroneous instructions given on behalf of the party in whose favor the verdict was returned are presumed prejudicial unless it affirmatively appears that the error was harmless), overruled on other grounds by State v. Arndt, 87 Wash.2d 374, 553 P.2d 1328 (1976); State v. Rotunno, 95 Wash.2d 931, 935, 631 P.2d 951 (1981) (harmless error can be found only if instruction "`in no way affected the final outcome of the case'" (citation omitted)).