[No. 35460-4-I.   Division One.   April 8, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. RUVIN MUNDEN, *Appellant*.

*Eric J. Nielsen* and *Nielsen & Acosta*; and *Mark V. Watanabe*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rod H. Scarr, Deputy,* for respondent.

BECKER, J. — Ruvin Munden appeals his conviction of second degree burglary. The question is whether the trial court erred in permitting the jury to convict him as an accomplice when the State's evidence tended to show that he and two others accomplished the burglary as principals. Because the evidence did not exclude the possibility that he acted both as principal and accomplice, we affirm.

On May 19, 1994, at about 12:45 A.M., Munden was hanging around with two juvenile acquaintances, Josh Strickland and Brian Rice, outside the Sheridan Market. At some point Rice walked up to the market and began trying to kick out the front window of the market. Strickland, Rice, and Munden all testified at trial that at this point Munden left the group, saying he did not want anything to do with it.

Rice and Strickland testified that they entered the market through the broken window and began to bag up various items from the market. Meanwhile, the owner, whose living quarters were adjoining, became aware that someone was in the market and called the police. When the police arrived, Strickland jumped through the front window and began running but was caught by two police officers.

The owner told the police that he saw a person with long hair and a black leather jacket jumping from the rear market window. A police dog followed a body scent from the spot under the rear window to some blackberry bushes, where the police discovered Munden hiding. The police took Munden into custody. The market owner

looked at Munden and said he thought he was the same person he had seen jump out of the window.

Rice, who was not apprehended by the police that night, testified that he had also been wearing a black leather jacket as well as a black hooded sweatshirt. He said that he went to the back of the market, opened a second-story window, jumped out, and ran, coincidentally ending up in the same thicket of blackberry bushes as Munden. Rice said he eluded police by remaining hidden in the bushes when Munden emerged.

Munden denied involvement with the burglary. He testified that when he left the market, he went down a hill, then realized he was going the opposite direction from his home. He started back up the hill but turned around when he saw the police. Because of his past criminal record, he decided to hide in the bushes at the bottom of the hill.

A police officer found in Munden's pockets two plastic green lighters of the type sold in the store. The lighters were not unique, and Munden said that he had picked them up earlier that day from a friend's coffee table.

Over Munden's objection, the court gave the following instructions on accomplice liability, based on RCW 9A.08.020. Instruction 7:

> You are instructed that a person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the crime.

Instruction 8:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
>
> (1) solicits, commands, encourages, or requests another person to commit the crime or
>
> (2) aids or agrees to aid another person in planning or committing the crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

The jury convicted Munden, and this appeal followed.

For his contention that the evidence was insufficient to permit the jury instructions on accomplice liability, Munden relies upon *State v. Amezola*.[1]

*Amezola* involved charges against four defendants for heroin possession with intent to deliver. The defendant-appellant Ramirez was the live-in companion of one of the other defendants. The testimony established that she kept house for the others but did not participate in packaging, selling, or distribution. The State proceeded against Ramirez at trial on two theories: constructive possession and accomplice liability. The jury returned a general guilty verdict against Ramirez. This court reversed her conviction because (1) the mere performance of domestic tasks was insufficient evidence upon which to establish accomplice liability; and (2) the error in giving an accomplice instruction unsupported by sufficient evidence could not be harmless.[2]

It is error to submit to the jury a theory for which there is insufficient evidence.[3] The concern here, as in *Amezola*, is to ensure that jurors were not invited to consider a theory of accomplice liability that was inadequately supported by the evidence.

It is undisputed that if the jury believed Munden entered the market, there was sufficient evidence to find him liable as a principal. The defense theory in the trial

[1]*State v. Amezola*, 49 Wn. App. 78, 741 P.2d 1024 (1987).

[2]*Amezola*, 49 Wn. App. at 85-91.

[3]*State v. Benn*, 120 Wn.2d 631, 654, 845 P.2d 289, *cert. denied*, 114 S. Ct. 382 (1993).

court was that Munden did not enter the market and that it was Rice, not Munden, who jumped from the window and led the dog to the hiding place in the bushes. "Our position is there wasn't any evidence that Mr. Munden was an accomplice. He either went into the building or he didn't." The State responded that even if Munden remained outside the market, he could be guilty as an accomplice because his possession of the lighters proved he had assisted in removing property from the market. On appeal, the parties take essentially the same positions that they did in the trial court. According to Munden, he could not have been an accomplice because if he was inside the market, he was a principal; if he was outside the market, the evidence of the lighters is insufficient to show that he participated in the crime. The State maintains that the lighters are sufficient evidence of participation outside the store.

■ Assuming that Munden did not go into the market, his possession of the lighters is quite thin evidence upon which to base a finding of accomplice participation in the burglary. But we need not determine whether that evidence is sufficient, because it is undisputed that there was sufficient evidence to put him inside the store: the testimony of the owner who identified Munden both on the scene and in the courtroom as the person he saw jumping out the rear window of the store, and the testimony of the officer whose dog tracked from just below the window to the place where Munden was hiding in the bushes. Evidence of Munden's presence inside the market, while proving his liability as a principal, does not exclude the possibility that he was also acting as an accomplice while inside. From the evidence that Munden was inside the store, the jury was entitled to find both that he committed burglary as a principal and that he simultaneously assisted, or stood ready to assist, the acts of burglary being committed by his companions. We therefore conclude that the trial court did not err in giving the accomplice instructions.

As part of its harmless error analysis, the *Amezola* court characterized accomplice liability and principal liability as alternative means of committing a crime:

> Where, as here, the jury is presented with alternative means of committing a crime, jury unanimity is not required as long as there is substantial evidence of both alternatives. *State v. Arndt*, 87 Wn.2d 374, 376-77, 553 P.2d 1328 (1976); *accord, State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984); *State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980). Since, as analyzed above, the evidence was insufficient to support the accomplice alternative, the error cannot be said to be harmless and the conviction must be reversed and the case remanded for retrial on the State's constructive possession theory only.[4]

Strictly speaking, accomplice liability, formerly referred to as aiding and abetting, does not constitute an alternative means of committing a crime.[5] An accomplice is charged with, and liable for, a particular crime committed by his principal.[6] But to say that accomplice liability is not an alternative means does not alter our analysis in the present case. We have not found the evidence insufficient to support the accomplice instruction, and therefore, unlike the *Amezola* court, we need not decide whether insufficiency of the evidence to support an accomplice theory must necessarily be deemed a prejudicial error.

Affirmed.

WEBSTER and COX, JJ., concur.

---

[4] *Amezola*, 49 Wn. App. at 90 (footnote omitted).

[5] *State v. Carothers*, 84 Wn.2d 256, 262, 525 P.2d 731 (1974), *overruled on other grounds in State v. Harris*, 102 Wn.2d 148, 685 P.2d 584 (1984); *State v. Williams*, 28 Wn. App. 209, 213, 622 P.2d 885, *review denied*, 95 Wn.2d 1024 (1981).

[6] *See State v. Wixon*, 30 Wn. App. 63, 76, 631 P.2d 1033, *review denied*, 96 Wn.2d 1012 (1981).